[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Austin Marottoli, brings this action seeking damages for injuries he claims to have suffered as a result of the negligence of the defendant, Hospital of St. Raphael ("HSR").
It is undisputed that the plaintiff was a patient at HSR on February 20, 1987, and that he fell and broke his right hip when he attempted to leave his bed at 9:40 p.m. to walk to the bathroom. In his revised amended complaint, the plaintiff claims that his fall and injuries were the result of negligence of the defendant in ten separate respects:
a] In failing to observe and appreciate the plaintiff's condition and take reasonable measures to insure the plaintiff's safety, such as providing a bed pan or having a nurse at his side to assist him or reasonable needs.
b] In that it failed and neglected to adequately and properly care for, treat and supervise plaintiff.
c] In that it failed to provide adequate and proper medical and nursing personnel who possessed the necessary knowledge, skill and experience to care for and treat the plaintiff.
d] In that it failed to provide medical personnel who could properly supervise the nursing staff, to ensure that plaintiff would be properly cared for.
e] In that it was understaffed and/or failed to provide an adequate number of nurses so as to efficiently care for and treat patients, including plaintiff. CT Page 9047
f] In that it failed to equip plaintiff's room with care/call button that worked properly.
g] In that the defendant's nurses and/or employees failed to obtain and/or request necessary and proper medical care instructions and guidelines from the supervising nurse and/or the treating physician for the plaintiff's post-operative care, and physical positioning and restraints given the foreseeability of a fall by someone in his condition and taking the medication prescribed for him.
h] In that it failed to be consciously aware of the call of the plaintiff for assistance via the call button.
i] In that it failed to exercise reasonable care in monitoring the plaintiff and his request for aid and assistance.
j] In that it failed to secure the guard rails to the plaintiff's bed in an upright position.
At the time the plaintiff entered the hospital in February 1987 for coronary by-pass surgery, he was also suffering from problems with his knees. He had used a cane intermittently for approximately two years and a cane was among his possessions at the hospital. His bypass surgery took place on February 17, 1987, and after achieving stability in the recovery room and intensive care unit, he was transferred to a surgical after-care floor, Verdi 5 East, room 506, on February 19, 1987. On February 19, plaintiff was assisted out of bed to sit in a chair (Ex. M).
The first nurse's progress note in his chart for February, 20, apparently before 2:00 a.m., indicates that the side rails to his bed were kept up while he was in bed and that during the daylight hours he was out of bed "ambulating with a cane with minimal assistance" but that "without cane patient does poorly".
The plaintiff claims that when he was settled in bed on the evening of February 20, the nurse, Kathleen Saunders, raised only the left side rail of his bed. He claims that he needed to defecate, pressed his call button, and, after obtaining no assistance within ten minutes, decided to get out of bed and walk across the room to the bathroom. He further claims that as he rose to his feet, he grasped a bedside table that slid away, because it was on wheels, and that he fell to the floor, CT Page 9048 fracturing his hip.
It is certainly not unheard of that a patient on a busy hospital floor has waited extended periods without obtaining the desired assistance from hospital staff. It is also, however, not unheard of for patients to decide to do without assistance things they are used to doing, even though they have been told not to do them post-surgically without help. A review of the testimony and the documentary evidence leads this court to the conclusion that Mr. Marottoli's fall and injury were not the result of negligence by the defendant but were caused by his own premature attempt to leave his bed unassisted.
While the plaintiff contends that he attempted to get out of bed on his own only after sitting and waiting in vain for assistance, his account of his attempt to get assistance was not credible. He described the call button as being located on the opposite side of the bed from what the court finds to have been its location, since it seems most unlikely that a coiled wire would have been stretched from a console across the chest of a cardiac patient as he lay in bed. The plaintiff further described the button he claims to have depressed as being on the top of a lowered side rail, located even with the mattress. The evidence demonstrated that, with the side rail down, the call button would have been well below the level of the mattress. The plaintiff claims to have heard nothing after he pushed the call button, even though that call system, which was not shown to be broken, emits a steady beeping sound once activated by the bedside button. The plaintiff's testimony that after his fall he "blacked out" and did not awaken until well into the next morning is belied by notations on the hospital chart of conversations he had with nurses and by the absence of any care usual to an unconscious patient. In sum, his recollection of the events of the incident appears to be unreliable, and no other witness substantiated any part of his description of his claimed action in signaling for assistance before leaving his bed.
The court finds that the procedure for settling patients for the night on Verdi 5 East in February 1987 was that both side rails be raised as a reminder to patients that they were not in their usual surroundings, and there is no basis for any finding that nurse Saunders, who was a substitute on the floor for the evening shift at issue, made any decision to vary that procedure by raising only one side rail on the plaintiff's bed. She testified that she moved the plaintiff's cane away from the side CT Page 9049 of the bed to a spot where it could not be reached and called his attention to this fact. The court found credible her testimony that her notation "SR [up]" on the plaintiff's chart meant, in her own system of chart abbreviation, that both side rails were raised when she settled the plaintiff for the night.
Mary Martha Smith, a nurse whose testimony and demeanor revealed her to be extraordinarily diligent and compassionate, testified that when she took over from Nurse Saunders for the night shift, she asked the plaintiff what had happened, and he stated that he had fallen after he put down the side rail to get to the bathroom by himself. Her contemporaneously recorded progress note is the same as her testimony, and nothing whatever in the examination of this witness suggested that she would be capable of writing an untruth in a patient report.
The court finds that, despite adequate precautions taken by the defendant to discourage the plaintiff from trying to leave his bed unassisted, he attempted to do so, even though he knew that he would have to walk without the cane he habitually used. Though the plaintiff denies knowing that the table he leaned on would be unable to support him because it was on wheels, the mention in the hospital record of his "diet" suggests that the table had been used in his presence and that he knew or should have known that it was on wheels and was not a reliable support.
The plaintiff presented no evidence to establish that the facilities and precautions provided to him were inadequate under the circumstances, nor that a person in the plaintiff's condition required restraint more extended than what was provided. The plaintiff did not demonstrate any deviation from the standard of care applicable to patients in his condition. See Kiniry v. Danbury Hospital, 183 Conn. 448, 455 (1981). The plaintiff did not prove that his call button was not working; rather, it appears to the court that he did not use it. The court finds that none of the plaintiff's claims of negligence has been established by a preponderance of the evidence.
Judgment shall enter in favor of the defendant.
Beverly J. Hodgson Judge of the Superior Court CT Page 9050